**In the United States District Court
for the District of Kansas**

---

Case No. 23-cv-01054-TC-RES

---

MISTIE BLANTON,

*Plaintiff*

v.

KENNETH KOOSER,
CHRISTOPHER HUFFMAN,

*Defendants*

---

**MEMORANDUM AND ORDER**

Mistie Blanton alleges that Sedgwick County Sheriff's Department employees Kenneth Kooser and Christopher Huffman used unreasonable force against her. Doc. 1. Kooser and Huffman move to dismiss Blanton's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Doc. 15. For the following reasons, their motion is granted in part and denied in part.

**I**

**A**

A federal district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement … showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining

1

allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

Ordinarily, a motion to dismiss is decided on the basis of the pleadings alone, along with any exhibits attached to the complaint. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). In some circumstances, a "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted); *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019); *see also Est. of Harmon v. Salt Lake City*, No. 20-4085, 2021 WL 5232248, *2 (10th Cir. Nov. 10, 2021) (applying that standard to video evidence at the motion-to-dismiss stage).

**B**

Blanton alleges—and, at this stage of the proceedings, the factual allegations she offers must be accepted as true—that Kooser and Huffman used excessive force to arrest her. *See generally* Doc. 1.[1] Her claim

---

[1] All document citations are to the document number and internal pagination assigned in the CM/ECF system.

2

arises from an encounter with the Defendants that occurred on April 30, 2021 while Blanton was mowing her grandmother's yard in Wichita, Kansas. *Id.* at ¶ 10. When Blanton asked her neighbor to remove his goats from her grandmother's yard so that she could mow the lawn, the neighbor called law enforcement to report a "verbal disturbance" between Blanton and the neighbor over the neighbor's goats. *Id.*

Law enforcement arrived at the home and "stated" that Blanton had an outstanding "traffic-related" warrant. Doc. 1 at ¶ 11. At some point, Blanton reentered the home and closed the door to a room behind her. Kooser, who had arrived at the scene after other responding officers, broke down the door in order to arrest her. *Id.* at ¶ 13. Before doing so, Kooser threatened Blanton, warning "I'm about to kick the s\*\*\*out of this door and then you're probably going to get f\*\*\*\*\* up." *Id.* at ¶ 12. Kooser then kicked open the door to the room and carrying a heavy "barricade," entered along with Huffman. *Id.* at ¶ 13. When Kooser kicked open the door, there were already "multiple" law enforcement officers on the premises. *Id.*

Kooser and Huffman, who were both armed, found Blanton "laying on the floor" with "no weapon." Doc. 1 at ¶ 13. At that point, Blanton alleges that both officers "aggressively ran" towards her while she was "lying on the floor, not actively resisting arrest and not attempting to flee." Doc. 1 at ¶ 14. Blanton alleges that Kooser "violently" struck her with his foot. *Id.* Both officers then pulled her arms behind her back in order to "shackle" her. *Id.* While doing so, Kooser put his "much larger" body weight fully on Blanton's back and "right upper extremity," and continued to do so even after she had been "successfully shackled." *Id.* at ¶ 14, 15. As a result of the manner of the arrest, Blanton suffered "an olecranon fracture of her right elbow," for which she has since had surgery. *Id.* at ¶ 15. In total, Blanton alleges that the officers "made no attempt to temper or limit" the amount of force they used, failed to intervene to prevent each other from using excessive force, and intentionally used excessive force in order to "punish" Blanton. *Id.* at ¶¶ 16, 19, 20.

Blanton filed suit against Kooser and Huffman in their individual capacities. Doc. 1 at 1. She asserts that both "violated [her] rights under the United States Constitution and Kansas law." Doc. 1 at ¶ 2. While the relatively short complaint never says as much, the parties assume that she is asserting an excessive force claim in violation of the Fourth Amendment. Doc. 18 at 6; Doc. 24 at 3. Kooser and Huffman request

3

that the case be dismissed for failure to state a claim and invoke the doctrine of qualified immunity. Doc. 15.[2]

## II

Blanton's allegations, taken as true and ignoring any facts outside the pleadings, state a claim for excessive force in violation of clearly established Fourth Amendment law. Accordingly, Kooser and Huffman's motion to dismiss, Doc. 15, is denied with respect to Blanton's claims under Section 1983.

### A

Invoking 42 U.S.C. § 1983, Blanton seeks damages for the violation of her constitutional rights due to alleged excessive use of force. Doc. 1 at ¶ 3. Section 1983 provides that "[e]very person who, under color of [state law,] subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. It creates no substantive rights but merely provides a mechanism for enforcing a right conferred by the Constitution or a federal statute. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002); *see also Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 174–75 (2023). To state a viable Section 1983 claim, a plaintiff must establish that a person acting under color of state law caused him or her to be deprived of a right secured by the Constitution or laws of the United States. *See Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (citing *West v. Atkins*, 487 U.S. 42, 48(1988)); *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006).

Kooser and Huffman invoke qualified immunity in response to Blanton's claim. Doc. 18 at 6, 10. Qualified immunity attempts to balance competing interests. Suits against government actors allow those wronged by government misconduct a method of redress. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)). But non-meritorious suits exact a high cost from society and government officials by unduly interfering with the

---

[2] Blanton's Complaint references 42 U.S.C. § 1985. Doc. 1 at ¶ 7. Kooser and Huffman seek dismissal of that claim. Doc. 18 at 13–14. Blanton agrees that claim should be dismissed. Doc. 24 at 6, n.5. As a result, their motion to dismiss is granted to the extent it concerns the Section 1985 claim.

discharge of official duties. *See id.*; *see also Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1277 (10th Cir. 1998). So government officials performing discretionary duties are immune from suit when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have been aware. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (recognizing municipalities may not rely on their officers' entitlement to qualified immunity). Whether an official is immune turns on the objective reasonableness of the official's actions, considering the laws clearly established at the time the official acted. *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Objective reasonableness is not an exacting standard; qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *See White v. Pauly*, 580 U.S. 73, 79 (2017); *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The analytical framework for the invocation of qualified immunity at the Rule 12 stage is settled. *See, e.g.*, *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021) (per curiam); *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam). First, the facts as pled in the complaint must allege conduct that, assuming the allegations are true, violates the Constitution or laws of the United States. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Second, the law must have been clearly established at the time of the alleged conduct such that the defendant had fair notice that his or her conduct was unlawful. *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). If both inquiries are answered in the affirmative, the motion to dismiss must be denied. But, if the answer to either is no, the defendant is entitled to judgment as a matter of law. *Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023).[3]

The first step requires Blanton to establish a constitutional violation. As the allegedly excessive force occurred "up to and including" Blanton's arrest, her claim arises under the Fourth Amendment's protection against unreasonable seizures. *Est. of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014); *McCoy v. Meyers*, 887 F.3d 1034, 1045 (10th

---

[3] Courts have discretion to address the inquiries in any order, as courts must "think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" *al-Kidd*, 563 U.S. at 735 (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

Cir. 2018) (citing *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)). "A police officer violates an arrestee's … Fourth Amendment right to be free from excessive force during an arrest if the officer's actions were not 'objectively reasonable' in light of the facts and circumstances confronting him." *McCowan v. Morales*, 945 F.3d 1276, 1283 (10th Cir. 2019) (citing *Est. of Ceballos v. Husk*, 919 F.3d 1204, 1213 (10th Cir. 2019)).

Reasonableness is a product of both "the nature and quality of intrusion" and "the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). *Graham* identified several factors to aid in that inquiry, including "the severity of the crime at issue," "whether the suspect poses an immediate threat to the safety of the officers or others," and "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* But, because officers are often forced to make "split-second judgments" under "stressful and dangerous conditions," the standard is never one of 20/20 hindsight and is always directed towards objective reasonableness considering the circumstances at the time of the conduct as they would have appeared to a reasonable officer. *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001).

If she states a constitutional claim, the next question is whether the law was clearly established. Discerning whether the relevant legal rule was clearly established is a narrow and context-specific exercise. *See City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021) (per curiam); *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam). In short, the precise contours of the legal right must have been so clear that every reasonable official in that circumstance would have understood what he or she was doing violated that right, leaving no debate as to the lawfulness of the conduct in the particular situation. *See Mullenix v. Luna*, 577 U.S. 7, 13–14 (2015); *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Ashcroft v. al-Kidd*, 563 U.S. 731, 740 (2011); *see also Rivas-Villegas*, 595 U.S. at 5-8 (reversing a denial of qualified immunity where the precedent relied upon had "materially distinguishable" facts such that it "did not give fair notice" to the official).

Practically, this means a "Supreme Court or Tenth Circuit decision" must have held that the same conduct (or very nearly the same

conduct) as the conduct at issue is a violation of law.[4] *Wise v. Caffey*, 72 F.4th 1199, 1209 (10th Cir. 2023). To be sure, a case "directly on point" is not necessary for a right to be clearly established, but existing precedent must have placed the constitutional question "beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam). In the context of a Fourth Amendment excessive force claim, this means that plaintiffs must show "that objectively reasonable officers could not have [] thought the force [used] was constitutionally permissible." *Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007).

## B

Kooser and Huffman argue that they did not violate any clearly established law. But taking the allegations in the complaint as true, Blanton states a claim. While Kooser and Huffman raise strong arguments against the existence of a constitutional violation, they do so by relying on facts drawn from body camera footage that cannot be considered at this stage.

### 1

Based on the Complaint, Blanton states a claim for excessive force. *Contra* Doc. 18 at 7-10, 11-13. The Supreme Court and Tenth Circuit has recognized that the right to arrest necessarily carries with it the right to use some degree of physical coercion, and that handcuffing is appropriate in nearly every circumstance. *Graham*, 490 U.S. at 396; *Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009). This includes minor traffic offenses. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354-55 (2001). Nonetheless, the force used must be calibrated to the situation; the salient inquiry is how much force was objectively warranted as informed by the non-exclusive *Graham* factors. *Mglej v. Gardner*, 974 F.3d 1151, 1167 (10th Cir. 2020).

---

[4] The Supreme Court has never held that circuit precedent may be a dispositive source of clearly established law, opting instead to assume without deciding that it might. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (citing *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 614 (2015), which cited *Carroll v. Carman*, 574 U.S. 13, 17 (2014), which, in turn, cited *Reichle*, 566 U.S. at 665-66)). Nonetheless, the law in the Tenth Circuit is clear: a "constitutional right is clearly established when a Tenth Circuit precedent is on point, making the constitutional violation apparent." *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017).

The allegations, assuming they are true, are troubling.[5] The Complaint alleges that Kooser threatened that he was going to "f***" Blanton up, then "kicked open the door" to the room where Blanton was lying. Doc. 1 at ¶¶ 12–13. Both Kooser and Huffman rushed towards her, and, while carrying a barricade, Kooser "violently" struck Blanton with his foot as punishment. *Id.* at ¶¶ 12, 14. Then, during the handcuffing process, Kooser placed "his much larger body weight" on Blanton and continued to do so even after she was "successfully shackled," as further punishment. *Id.* at ¶ 14. Along with Kooser, Huffman is alleged to have placed "force and weight" on Blanton's "right upper extremity" during the arrest and handcuffing. *Id.* at ¶ 15. And it is alleged that he "failed to intervene" as Kooser used "objectively unreasonable force." *Id.* at ¶ 16. As a result of Huffman and Kooser's actions, Blanton suffered a broken elbow, requiring surgery. *Id.* at ¶ 15.

The allegations, accepted as true, state a claim for excessive force. The degree of force used, and the resulting injuries exceed that which was reasonable under the situation. First, the crime giving rise to the arrest warrant appears to have been non-violent. Blanton's outstanding warrant was for a "traffic-related" offense and there is no basis to believe that she was prone to, or had employed violence or otherwise resisted arrest in the past. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1160 (10th Cir. 2008) (noting that an arrest for a misdemeanor requires reduced force); *see also Dixon v. Richer*, 922 F.2d 1456, 1462–63 (10th Cir. 1991).

Second, Blanton did not present any threat, immediate or otherwise, to the officers, herself, or to the public more generally. Indeed, there is no indication from the Complaint that Blanton ever made any "hostile motions towards" the officers and there is no suggestion that she was armed with any dangerous object. To the contrary, the Complaint alleges that she was lying on the floor when the officers encountered her. The fact that there was no evidence to suggest that Blanton posed an immediate threat to either officer weighs against the use of more than minimal force. *Mglej*, 974 F.3d at 1168.

---

[5] In some cases, the conduct of police officers may be considered in the aggregate, rather than individually. *See Est. of Booker v. Gomez*, 745 F.3d 405, 421 (10th Cir. 2014). That is appropriate here since the Complaint alleges that Huffman and Kooser acted collectively to arrest her, Doc. 1 at ¶¶ 14–23, and neither Defendant raises a personal participation defense.

Third, the allegations suggest that Blanton was not resisting arrest at the time the force was used or attempting to flee. The Complaint describes multiple police officers responding to the scene, Blanton lying in her grandmother's home on the floor, and no active resistance to the officers' attempt to arrest her. Doc. 1 at ¶¶ 11-14. Again, this confirms only minimal force was needed. *Mglej*, 974 F.3d at 1168.

Despite that, the force used was more than minimal. According to the Complaint, Kooser threatened that he was going to "f\*\*\*" Blanton up, then "kicked open the door" to the room where Blanton was lying. Doc. 1 at ¶¶ 12–13. Both Kooser and Huffman rushed towards her and Kooser "violently" kicked her, while carrying a barricade, as punishment. *Id.* at ¶¶ 12, 14. Then, during the handcuffing process, Blanton alleges that Kooser and Huffman placed "[their] much larger body weight" on her and continued to do so even after she was "successfully shackled," all as further punishment. *Id.* at ¶ 14. As a result of Huffman and Kooser's actions, Blanton suffered a broken elbow. *Id.* at ¶ 15.

**2**

The Defendants' position does not confront Blanton's allegations. Instead, their principal point is that the facts alleged are not what happened. Blanton, they argue, left most of the relevant facts out of her Complaint based on review of the body camera footage. Doc. 18 at 2-4. Huffman and Kooser's version of the facts would present a much closer question. But at this stage of the proceedings, the videos and the mitigating context that Defendants derive from them cannot be considered.

A court typically may only consider the well-pled allegations plus any exhibits or documents attached to the complaint. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). In some limited circumstances, federal courts have discretion to "consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted). This includes body camera footage. *Est. of Harmon v. Salt Lake City*, No. 20-4085, 2021 WL 5232248, \*2 (10th Cir. Nov. 10, 2021) (affirming the consideration of body camera footage incorporated into a complaint in evaluating a motion to dismiss).

9

Several factors counsel against considering the contents of any of the videos at this stage of the proceedings.[6] First, it is not clear that Blanton actually referred to the video in the Complaint. Although the Complaint quotes Kooser's threat, the Complaint does not cite any body camera video for that quotation. The defendants assume that the quotation is from the body camera footage, Doc. 27 at 1, but it may just as easily have been Blanton's recollection. Even if the quotation was pulled from a body camera video, there is no way of telling which one. Defendants submitted four videos and provided no basis to do anything other than consider all of them. That weighs against considering the videos. *See Est. of Holmes by & through Couser v. Somers*, 387 F. Supp. 3d 1233, 1243 (D. Kan. 2019) (declining to consider six different body camera videos where the "parties' memoranda conflict[ed] as to the events occurring on the videos, the statements made therein, and the party making those statements," and would invite the court to "evaluate competing interpretations of the videos" that "may be susceptible to more than one interpretation"), *aff'd sub nom. Couser v. Gay*, 959 F.3d 1018 (10th Cir. 2020).

Second, Blanton does not consent to consideration of any part of the videos. Doc. 24 at 2. That distinguishes this case from situations where the Plaintiff consented to the consideration of some but not all body camera footage. *See Est. of Harmon v. Salt Lake City*, No. 20-4085, 2021 WL 5232248, *2 (10th Cir. Nov. 10, 2021) (affirming the consideration of body camera footage where Plaintiffs "did not object to the court considering the body-cam videos," and objected only to the consideration of "frame-by-frame excerpts").

### C

Defendants also assert—without explanation—that Blanton's Fourth Amendment right was not clearly established. Doc. 18 at 10, 12. Well before the incident described in Blanton's Complaint, the Tenth Circuit had recognized the right of a handcuffed individual who is not attempting to evade arrest, poses no threat to safety, and is wanted for a minor crime to be free from the use of such force and

---

[6] Blanton does not dispute the authenticity of the videos and instead contends that the videos "are not central to her claims." Doc. 24 at 3. That argument is not persuasive. *Cf. Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (finding videos that documented words central to a claim of defamation were central to the complaint).

attendant significant injury. *Mglej v. Gardner*, 974 F.3d 1151, 1169-70 (10th Cir. 2020) (affirming a district court's conclusion that it was clearly established, at the time the defendant arrested the plaintiff, that unnecessarily tight handcuffs violated the law); *see also Elder v. Holloway*, 510 U.S. 510, 516 (1994) (recognizing federal courts have an obligation to survey the full range of relevant precedent to ascertain the clarity of the law).

There are obvious factual distinctions between Blanton's case and the facts in *Mglej*. In *Mglej*, the allegation was that the officer knew he placed the handcuffs on the plaintiff too tight and that this could cause (and, ultimately, did cause) long-lasting injuries. *Mglej*, 974 F.3d at 1167. There were no allegations that the arresting officer made threats to inflict harm on the arrestee, struck the arrestee with the intent to punish after she had been restrained, or broke the arrestee's bones even though she was not resisting. Those factual distinctions emphasize, not undermine, the clarity of the violation Blanton alleged. Assuming it occurred as Blanton alleges, Blanton's allegations confirm the defendants' conduct fell far afield of the breathing room qualified immunity affords.

*Mglej* is not an isolated case. In *McCoy v. Meyers*, for instance, officers breached a motel room in a hostage situation and found McCoy with a gun sitting on a motel room bed. *McCoy v. Meyers*, 887 F.3d 1034, 1039 (10th Cir. 2018). McCoy was ordered to drop the gun and complied. *Id.* at 1040. McCoy was then pulled off the bed where several officers pinned him down, applied a neck restraint, and hit him "in the head, shoulders, back, and arms." *Id.* at 1041. As a result, McCoy became unconscious. *Id.* While he was unconscious, his hands and feet were zip-tied together. *Id.* Once he became conscious again, and while he was bound hand and foot, an officer hit McCoy again several times and applied another neck restraint, recklessly rendering him unconscious again. *Id.* at 1042. The Tenth Circuit held that the use of such "post-restraint" force was excessive based on clearly established law. *Id.* at 1052 (applying this rule to conduct that occurred in 2011). In short, using gratuitous, reckless force against "a fully compliant and subdued misdemeanant arrestee who posed no threat to anyone" is excessive. *McCowan v. Morales*, 945 F.3d 1276, 1284 (10th Cir. 2019); *see also Wilkins v. City of Tulsa, Oklahoma*. 33 F.4th 1265 (10th Cir. 2022) (holding that the use of pepper spray against a subdued, misdemeanant arrestee who was not resisting was unreasonable and excessive).

Moreover, Defendants' effort to distinguish the authorities offered by Blanton do not justify a different result. *Contra* Doc. 27 at 4-5. In *Est. of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014), the Tenth Circuit held that it was not reasonable to use upper-back pressure, a taser, and a carotid restraint against an individual (who ultimately died) who was not resisting arrest and was restrained by handcuffs. 745 F.3d at 428-29 (applying Fourth Amendment principles in a Fourteenth Amendment context). And in *Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008), the Tenth Circuit held that officers' use of force on an individual who had been restrained and that they knew was susceptible to positional asphyxiation constituted unreasonable force that violated clearly established law. *Weigel*, 544 F.3d at 1154. Defendants rightly contend that the methods of applying the force (*e.g.*, a taser instead of a knee) or resulting injury (*e.g.*, death instead of a broken bone) are different here than in *Weigel* or *Estate of Booker*. Doc. 27 at 4–5. But those differences fail to undermine the clarity of the prohibition—as applied in, among other cases, *Mglej*, *McCoy*, and *Wilkins*—against using gratuitous force and causing serious injury to a misdemeanant arrestee who is not resisting. *See, e.g., Packard v. Budaj*, 86 F.4th 859, 869 (10th Cir. 2023) (noting that the clearly established inquiry is not a "scavenger hunt for prior cases with precisely the same facts").

### III

For the foregoing reasons, Kooser and Huffman's Motion to Dismiss, Doc. 15, is GRANTED in part and DENIED in part.

It is so ordered.

Date: May 30, 2024        s/ Toby Crouse
                          Toby Crouse
                          United States District Judge